**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MONTVALE SURGICAL CENTER a/s/o G.T., | CIVIL ACTION NO.: 2:12-cv-06916-JLL-MAH |
| Plaintiffs(s), | |
| v. | **CIVIL ACTION** |
| COVENTRY HEALTH CARE; AMICA MUTUAL INSURANCE COMPANY; ABC CORP. (1-10) (Said names being fictitious and unknown entities), | |
| Defendant(s), | |

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DIMISS

On the Brief and Of Counsel:

Andrew R. Bronsnick, Esq.

**PRELIMINARY STATEMENT**

Plaintiff, Montvale Surgical Center, LLC, ("Plaintiff") under an assignment of benefits from G.T. and through their undersigned counsel, submits this memorandum of law in opposition to the Motion to Dismiss (the "Motion") submitted by Defendants Coventry Health Care ("Coventry") and Amica Mutual Insurance Company ("Amica"). For the reasons set forth below, the Court should deny the Motion in its entirety.

Plaintiff, an ambulatory surgical center and out-of-network healthcare medical provider, asserts the right to recover payment for a medical procedure known as a Manipulation Under Anesthesia or "MUA." The MUAs were performed on G.T.'s hips, shoulders and spine.

The gravamen of the Complaint is that Coventry/Amica has failed to pay the Plaintiff for a medically necessary procedure. By denying coverage for MUA procedures on the grounds that the procedures supposedly are "experimental," Coventry/Amica never addressed whether the procedure was medically necessary. Complaint ¶16. The Complaint alleges that Coventry/Amica did not provide a proper response to the appeals submitted by the Plaintiff and did not provide an explanation for its determinations. The Complaint further alleges that the medical community, including the American Medical Association, determined that the MUA procedures are accepted and non-experimental. Complaint ¶15. In short, Coventry/Amica had adopted a blanket policy of requiring that patients and their treatment providers undergo an arduous appeal process when, in reality, Coventry/Amica has preordained that it will deny coverage for certain medical procedures. As such, the appeal process is futile.

The thrust of the Motion is the contention that Coventry/Amica determined that the MUA, is "experimental and investigational." On this point, Coventry/Amica relies an

unpublished decision from several other, wholly separate ERSIA plans. Defendants fail to provide a copy of their plan in this case or any internal documents confirming their procedure regarding MUAs and/or experimental and investigational medical treatment.

Manipulation Under Anesthesia is a manual therapy treatment system which is used to improve articular and soft tissue movement using specifically-controlled release, myofascial manipulation, and mobilization techniques with an anesthesiologist while the patient is under moderate to deep sedation using monitorized anesthesia care. For joints that lack a complete range of motion, MUA is employed by specially-trained chiropractors and orthopedic surgeons together with an anesthesiologist as a means of breaking up scar tissue around the joint. For more than 30 years, MUA procedures have been listed as a Category I CPT code in the Codebook of Reimbursable Procedures published by the American Medical Association ("AMA"). The AMA has stated that this procedure is consistent with contemporary medical practice. The applicable MUA protocols, set forth by the various articles, hold (*inter alia*) that MUA is an appropriate treatment for pain. Despite the fact that MUA procedures are not experimental, Coventry/Amica's policy is to deny requests for reimbursement "across the board" for such procedures. Plaintiff was obliged to pursue a multi-level appeals procedure, and informed at each step of the process that Coventry/Amica was denying the claim on the ground that MUA procedures were "experimental."

## LEGAL ARGUMENT

### I.

### APPLICABLE LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss should be granted only when, "accepting all the allegations in the complaint to be true, and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to show that it is entitled to the relief being sought." Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). To withstand a Rule 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted. Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988).

A "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." Mortensen v. First Federal Savings and Loan Ass'n, 549 F .2d 884, 891 (3d Cir. 1977). In order to grant a 12(b)(6) motion to dismiss, the Court must find that plaintiffs will be unable to prevail even if they prove all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint. Id.

### II.

### THE COMPLAINT STATES CLAIMS UNDER ERISA

**A. The Facts Show that Horizon Has Acted in Violation of ERISA**

Under ERISA 502(a)(1)(B):

(a) A civil action may be brought

(1) by a participant or beneficiary

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan 29 U.S.C. § 1132(a)(1)(B).

4

The standard under which ERISA governed health plan are judged, is whether the determination to deny reimbursement was arbitrary and capricious. A plan administrator's decision is arbitrary and capricious if "it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Orvosh v. Program of Group Ins. For Salaried Employees of Volkswagen of Am. Inc., 222 F.3d 123, 129 (3d Cir. 2000).

The Complaint alleges that Coventry/Amica improperly denied reimbursement for MUA medical procedures, despite the fact that the procedures are properly prescribed and performed, and are recognized by the American Medical Association as non-experimental, non-emerging medical procedures" (Complaint ¶15) and are held to be an appropriate treatment for pain under the applicable MUA protocols. The Complaint sets forth that the Plaintiff provided the facility wherein MUA services were performed for G.T., received an assignment of benefits from the patient, submitted requests for reimbursement to Coventry/Amica, and were denied on the ground that MUA procedures supposedly were "experimental." In this case, the Plaintiff followed the multi-stage appeals process dictated by Coventry/Amica through to a fruitless end. Plaintiff seeks damages comprised of the benefits improperly denied and the unnecessary administrative and legal costs imposed on providers and patients pursuing a preordained result. See, e.g., Pennsylvania Chiropractic Assoc. v. Blue Cross Blue Shield Assoc., 2010 WL 1979569, at *25 (N.D.Ill. May 17, 2010) (declining to dismiss ERISA claims brought by chiropractic health care providers alleging that insurance companies maintained an improper practice of demanding recoupment, on fraudulent pretexts, of reimbursements paid to the providers.)

Coventry/Amica's entire basis for denying the MUA of the spine, shoulders and hips is

based upon its blanket policy of denying this medical procedure regardless of the efficacy and medical benefit to the patient. In short, Coventry/Amica would never permit payment of this medical procedure as a matter of course. The entire rationale behind this Policy is not clear since there has not been any discovery in this case.

The theory propounded in the Complaint is not merely that Coventry/Amica's reliance on the ground that MUA is "experimental" in denying coverage is arbitrary and capricious, but that (a) Coventry/Amica applies a blanket policy of denying all MUA reimbursements, (b) that policy is arbitrarily and capricious, and therefore (c) denials of reimbursement pursuant to that policy are arbitrary and capricious. Because Coventry/Amica's blanket policy of denial has been determinative in every MUA case, and foreclosed further analysis, there simply were no other independent grounds for Coventry/Amica's coverage decisions. Coventry/Amica's attempt to justify its systematic denials with the indefensible contention that MUA procedures are *per se* experimental – a contention utterly belied by the applicable medical authorities, as alleged in the Complaint. Yet, Coventry/Amica fails to provide any basis for the categorization of the MUA procedure as experimental and investigational. In fact, they do not provide the Court with any documents whatsoever to demonstrate that the MUA procedure has been deemed as experimental and investigation by Coventry/Amica.

**B. Distinction from <u>Advanced Rehabilitation</u> Decision**

Coventry/Amica implies that the Complaint is deficient in that the Complaint only alleges the existence of a CPT code for the MUA and that basis, alone, is insufficient to survive a motion to dismiss. However, Coventry/Amica relies upon a case with different facts. In <u>Advanced Rehabilitation, LLC v. United Health Group, Inc.</u>, No. 10-CV-00263, 2011 WL 995960 (D.N.J. March 17, 2011), several ERISA Plans denied payment of MUA based upon a clear-cut

provision in the ERISA plans at issue--that payments would not be made for procedures that are deemed "experimental and investigational." The Court in <u>Advanced Rehab</u> required production of documentation from the Plans before the motion to dismiss was decided. Coventry/Amica fails to provide any such policy or provision as part of the case herein. In fact, the parties have not engaged in any discovery or Rule 16 exchanges in this case. In short, Plaintiff has not been afforded any opportunity to review the Coventry/Amica Plan or the administrative record in this case.

Coventry/Amica argues that the denials of reimbursement were not arbitrary and capricious to the extent the denials of the MUA procedures are "experimental." The fact that the specific records of G.T. are not reviewed or taken into consideration speaks to the manner in which Defendants acted. Because Coventry/Amica's blanket policy of denial is determinative in every MUA case, and further analysis is foreclosed, there simply were no other independent grounds for Coventry/Amica's coverage decisions.

The holding of <u>DeVito v. Aetna, Inc.</u>, 536 F. Supp. 2d 523 (D.N.J. 2008), is instructive here. In <u>DeVito</u>, Judge Hochberg refused to dismiss a complaint alleging that the insurance company had a policy of refusing to pay for treatments for eating disorders, allegations that are extremely similar to those here. As Judge Hochberg explained her ruling:

> Although Defendants argue that '[n]either the Mental Health Parity Law nor the SEHB plans allow Aetna to presume all treatment for BBMI or non-BBMI is 'medically necessary,' this is immaterial to the present motion. Plaintiffs do not allege that Defendants are required to find all treatment for eating disorders 'medically necessary.' Rather, Plaintiffs allege that Defendants' denial of claims on grounds that the treatment was 'not medically necessary' was pretextual. Plaintiffs allege that Defendants have improperly denied some claims as 'not medically necessary' because of Defendants' policy of denying all such claims in violation of the terms of Plaintiffs' contracts. Whether Plaintiffs' pretext allegations are true or false is an issue that will be determined when the case reaches the merits stage.

7

536 F. Supp. 2d at 532 n.7. Judge Hochberg also found sufficient plaintiffs' allegations that the appeal process was an exercise in futility, at least for the purposes of a Rule 12(b)(6) motion. Id at 532.

Plaintiffs urge the Court to adopt the DeVito reasoning in this case. This case illustrates that Coventry/Amica rejects MUA claims as a matter of routine without any individualized assessment of medical necessity. G.T. received MUA treatments for pain in the spine, hips and shoulders. Coventry/Amica initially denied reimbursement, stating that the MUA procedures were experimental, investigational, and/or not medically necessary. G.T.'s medical records were then submitted to Coventry/Amica with a first-level appeal of the denial, along with a letter detailing the case and explaining why the procedures were medically necessary. Coventry/Amica denied the appeal, stating MUA is experimental/investigational. Clearly, Coventry/Amica was not grounding its denial on any individualized analysis of G.T.'s case for medical necessity, but rather on a blanket policy of denying MUA claims. Moreover, Coventry/Amica's blanket denial is not based upon any medical evidence presented to the Court.

Therefore, at a minimum, Coventry/Amica should be required to produce their Plan, the medical documentation upon which they rely and denials of reimbursement with the basis for same.

**C. Plaintiffs Never Reached the Issue of Medical Necessity**

Coventry/Amica never addresses the medical necessity of G.T.'s medical treatment since they erect the barrier by deeming the MUA procedure on a whole as experimental and investigational. Coventry/Amica has failed to comply with the medical review requirement and time constraints that it required to follow. See 29 CFR Part 2560 (Nov. 10, 2000) at p. 70267 ("the plan administrator shall notify the claimant…of the plan's adverse benefit determination

within a reasonable period of time, but not later than 30 days after receipt of the claim.").

## **CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully submit that Defendant's Motion for to Dismiss should be denied.

                                        **MASSOOD & BRONSNICK, LLC**
                                        **Attorney for Plaintiffs**

                              **By:** _____
                                        **ANDREW R. BRONSNICK**

Dated: March 4, 2013

9