IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC, a/s/o GERALD TYSKA, Plaintiff, v. COVENTRY HEALTH CARE, AMICA MUTUAL INSURANCE COMPANY and ABC CORP. (1-10), Defendants | : Civil Action No. : : 2:12-cv-06916-JLL-MAH : : : **REPLY IN FURTHER SUPPORT OF** : **DEFENDANTS' JOINT MOTION TO** : **DISMISS** : : Motion Day: March 18, 2013 |

## INTRODUCTION

On February 15, 2013, Defendants Coventry Health Care, Inc. (incorrectly identified as "Coventry Health Care") ("Coventry") and Amica Mutual Insurance Company ("Amica") (collectively, "Defendants") filed a motion to dismiss Plaintiff's complaint. Defendants advanced two central arguments in favor of dismissal: (1) that Plaintiff had not alleged facts sufficient to give rise to a plausible claim for relief; and (2) that ERISA completely and expressly preempts Plaintiff's state law claims. On March 4, 2013, Plaintiff filed its brief in opposition to the motion to dismiss.

As a preliminary matter, Plaintiff's opposition brief is as notable for what it *does not* say as it is for what it does. Specifically, Plaintiff does not even attempt to respond to Defendants' argument that the state law breach of contract claims are expressly preempted by ERISA. Thus, Plaintiff concedes dismissal of Counts III and IV.[1]

---

[1] Furthermore, Plaintiff does not respond to Defendants' argument that, in the event the complaint is not dismissed in its entirety on substantive ground, the Court should order Montvale to replead its complaint. Rather, Plaintiff continues to attribute all conduct to "Coventry/Amica," reinforcing the need for clarity in the allegations. Thus, at bare minimum, the Complaint should be dismissed in its entirety – with prejudice as to Plaintiffs' state law claims and with direction to differentiate Defendants for purposes of its ERISA claims.

Moreover, Plaintiff's arguments that its ERISA claims should not be dismissed miss the mark. Plaintiff argues that the Court should decline to follow the Third Circuit's recent opinion in *Advanced Rehabilitation, LLC v. UnitedHealth Group, Inc.*, No. 11-4269, 2012 WL 4354782 (3d Cir. Sept. 25, 2012) – a case that is directly on point – and instead follow a case that is factually distinct from this case. However, the rationale in *Advanced Rehabilitation* should prevail and Plaintiff's complaint should be dismissed in its entirety.

## LEGAL ARGUMENTS

### 1. The mere existence of a CPT code does not give rise to a plausible claim for relief.

To state a plausible ERISA claim, Plaintiff must allege that the decision to deny benefits under the plan was an abuse of discretion. Consequently, a Court may overturn a plan administrator's decision only "if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (*quoting Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Thus, the central issue for purposes of this motion to dismiss is whether Plaintiff has pleaded sufficient facts to demonstrate that Defendants' coverage determinations plausibly amounted to an abuse of discretion. Applying the reasoning of the Third Circuit *Advanced Rehabilitation*, the answer is an unequivocal "no," and the complaint should be dismissed.

Plaintiff alleges that the Defendants' denial of benefits was an abuse of discretion because Defendants "considered the MUA treatment administered to Tyska to be experimental and investigational," when in fact, "there exist AMA-CPT codes that indicate that MUA is not investigational or experimental …." Compl. ¶ 15. However, as the Third Circuit made clear in *Advanced Rehabilitation*, "a mere CPT code is not enough to establish a plausible entitlement to

relief." *Advanced Rehabilitation,* 2012 WL 4354782, at *3. Therefore, Plaintiff's allegations are insufficient and its complaint should be dismissed.

Plaintiff attempts to save its complaint in several ways, each of which is unavailing. First, Plaintiff suggests that it has alleged more than a mere CPT code. For example, Plaintiff states in its opposition brief that "[t]he Complaint further alleges that the medical community, including the American Medical Association, determined that the MUA procedures are accepted and non-experimental." Opp. Br. at 2; *see also id.* at 5 ("[t]he Complaint alleges … that the procedures are properly prescribed and performed, and are recognized by the American Medical Association as non-experimental, non-emerging medical procedures"). This is simply untrue. Plaintiff makes no such allegation in Paragraph 15 (the paragraph that Plaintiff cites to when making these claims) or anywhere else in its complaint. Instead, Plaintiff makes the impermissible leap from inclusion of the procedure in the AMA's CPT codebook to acceptance of the procedure by the AMA – a leap specifically rejected in *Advanced Rehabilitation*. *See Advanced Rehab.,* 2012 WL 4354782, at *3 ("Indeed, in its Introduction to the Codebook, the AMA warns that '[i]nclusion in the ... Codebook does not represent endorsement ... of any particular diagnostic or therapeutic procedure.'").

Second, Plaintiff attempts to save its complaint by alleging that Defendants had an arbitrary and capricious "blanket policy" of denying MUA claims. Opp. Br. at 5-6; *see also id.* at 8 (arguing that Defendants "erect the barrier by deeming MUA procedure on a whole as experimental and investigational"). However, Plaintiff makes no such allegations in its complaint. Nor could such an allegation be plausibly inferred since only one patient's treatment is at issue. Thus, the argument concerning a "blanket policy" is simply unfounded speculation that is not even mentioned in the complaint. Furthermore, even assuming the existence of such a

"blanket policy," Plaintiff's allegations fall well short of plausibly showing that such a policy was arbitrary and capricious. Indeed, if MUA procedures were experimental or not medically necessary, routinely denying coverage for such procedures would be appropriate.

Third, Plaintiff argues that Defendants have "fail[ed] to provide any basis for the categorization of the MUA procedure as experimental or investigational." Opp. Br. at 6. Plaintiff attempts to use the lack of documents as the basis for distinguishing this case from *Advanced Rehabilitation*, *see Opp. Br.* at 6-7, but this argument is emblematic of Plaintiff's misunderstanding of Defendants' arguments (and its misunderstanding of the Third Circuit's rationale in *Advanced Rehabilitation*). Defendants need not provide any documents to the Court (and it is unclear whether they even could provide such documents at the motion to dimiss stage). The issue here is simply that *Plaintiff* has failed to make allegations that would give rise to a plausible claim for relief. It has not made specific factual allegations from which the Court can infer that MUA procedures were covered. It has <u>not</u> alleged that MUA procedures were beneficial to Mr. Tyska, let alone necessary to meet his individual needs. It has <u>not</u> alleged any facts suggesting that MUA treatment was the most appropriate level of service that could safely be supplied in the given circumstances. It has <u>not</u> alleged that MUA procedures were both consistent with national medical standards and considered by medical literature to be safe and effective. It has <u>only</u> alleged that an AMA-CPT code for MUA exists. Such an allegation is woefully insufficient to give rise to a plausible claim for relief, and the complaint should be dismissed as a matter of law.

Fourth and finally, Plaintiff urges the Court to follow a footnote in *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523 (D.N.J. 2008), rather than the much more applicable holding in *Advanced Rehabilitation*. *DeVito* is distinguishable on various grounds, the most important of which is the

fact that plaintiffs in in that case had alleged a pretextual basis for denying treatment as an explanation as to why exhausting the grievance procedures mandated by their insurance policies would have been futile.  There was no concern whether the treatment at issue was experimental or investigational, nor was there any issue of whether the Plaintiff had alleged facts sufficient to make a plausible claim for the denial of benefits.  Thus, the allegations in *DeVito* are not "extremely similar" to those alleged by Plaintiff in this case, and its holding does not control the outcome in this case.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| | |
|  s/ Robert E. Kelly          |  s/ John Bloor         |
| Robert E. Kelly | John Bloor |
| Law Offices of Robert E. Kelly, LLC | Drinker Biddle & Reath LLP |
| Two Logan Square | One Logan Square, Suite 2000 |
| 100 N. 18th Street, Suite 300 | Philadelphia, PA 19103-6996 |
| Philadelphia, PA 19103 | (215) 988-2700 |
| rkelly@robertekelly.com | john.bloor@dbr.com |
| | |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| *Coventry Health Care, Inc.* | *Amica Mutual Insurance Company* |
| | |
| Dated: March 11, 2013 | Dated: March 11, 2013 |

## **CERTIFICATE OF SERVICE**

The undersigned counsel for Defendant Coventry Health Care, Inc. hereby certifies that on this date, I electronically filed the foregoing by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Robert E. Kelly*
Robert E. Kelly

Dated:  March 11, 2013